HAILES and others *v.* ALBANY STOVE Co.*

(*Circuit Court, N. D. New York.* March 15, 1883.)

1. PATENTS FOR INVENTIONS—DISCLAIMER—REISSUE.

Where a patentee has defectively or insufficiently described his invention, and claimed more than he has a right to claim as new, he is entitled to a reissue of his patent upon a surrender of the original; but it is not the office of a disclaimer to reform or alter the description of an invention.

2. SAME—OFFICE OF DISCLAIMER.

Where there are several claims, some of which he is entitled to, and the part of the invention which is his own can be definitely distinguishable from that which is not his own, a disclaimer before suit brought will put him right and enable him to recover upon his patent as though it had originally been confined to the proper claims; but he cannot convert a claim for one thing into a claim for something else, and amend the description to effectuate such claim.

3. SAME—CASE.

In this case as there was nothing in the description or claim of the complainant's patent to indicate to the public that they were appropriating anything of which the patentees were the inventors, the disclaimer filed by the complainants cannot avail, and the bill will be dismissed

In Equity.

*I. G. Younglove* and *A. J. Todd,* for complainants.

*Esek Cowen,* for defendant.

WALLACE, J. The letters patent upon which this action is founded were granted to Lewis Rathbone and William Hailes, November 21, 1865, and are for an improvement in coal stoves. The claim involved here is as follows:

*Affirmed. See 8 Sup. Ct. Rep. 262.

"Arranging a perforated fire-pot, with a grate bottom, within a circular stove, having provision for the admission of air below the point of suspension of said fire-pot substantially as described."

In view of the prior state of the art, and especially in view of the letters patent granted to Zebulon Hunt, June 14, 1864, if the patentees invented anything new, it consisted in a perforated fire-pot for a stove, which required that the upper half of the wall of the fire-pot should be solid, and the lower half perforated with vertical slots or openings, in order to perform the peculiar function assigned to it in the combination of which it was a part. The complainants' expert concedes that in order to do the work required of the fire-pot the vertical slots or openings must extend substantially from the bottom of the fire-pot half-way up to the top of the wall, and must not extend substantially any higher. It is not necessary to consider the special advantages of this feature of the device, or to discuss the question whether, practically, it adds to the efficiency of the stove, or alone, or in combination with the other parts, accomplishes a new result, because there is not a hint in the description of the invention, or in the claim, of any purpose or function for which this peculiar adjustment of perforations and solid wall is advantageous. The patent does not point out the length or width of the vertical openings, the size of the perforations, or the necessity or propriety of confining them to the lower half of the wall of the fire-pot, or the necessity or propriety of a solid wall for the upper half. The only definite allusion in the patent to the character of the perforations is found in that part of the general statement of the object of the invention, which speaks of obtaining more perfect combustion by admitting air "through the sides of a suspended fire-pot at all points," and in that part of the specification which describes the fire-pot as extending from the enlarged fire-chamber C, down into the air-chamber B, and "made with verticle openings through its sides, for the admission of air into the body of coal within it." Reading the entire description, the conclusion is irresistible that the patentees never conceived that any such peculiar adjustment of the perforations and solid wall was of the slightest importance in their invention. Certainly there is no description which would enable the public to comprehend that the claim was intended to be for a combination in which the fire-pot should preserve these distinct characteristics of the perforations and the solid wall, or to enable any person skilled in the art to which it appertains, to make a fire-pot such as is required. No person could

ascertain, without experiment, that the operation of a fire-pot, in which the upper half of the wall is solid, is different from one in which only a quarter of the wall is solid, and there is nothing in the patent to indicate the necessity of any adjustment between the location and proportions of the solid wall and that of the perforated surface. A fire-pot answering the specification is shown in the patent to Zebulon Hunt, and it is conceded that that patent anticipates the complainants' patent, unless the latter is saved because the vertical openings in Hunt's fire-pot extend nearly to the top of the fire-pot from the grate, instead of ending about half-way up.

It is true that the drawings of the complainants' patent show a fire-pot in which the vertical openings extend from the grate only about half-way towards the top. But, as no one would infer from anything contained in the description or claim' that' this is an essential or important feature of the fire-pot, it could not be supposed that the patentees intended to limit themselves to a fire-pot having that peculiar feature.

The complainants have endeavored to escape defeat by filing a disclaimer since this suit was brought. They disclaim "so much of the claim as covers perforations or openings in the sides of a suspended fire-pot extending throughout the entire depth of its sides, and they limit such perforations or openings to substantially the lower half of the fire-pot;" and they claim "a fire-pot suspended from its upper edge with substantially the upper half of its sides made solid, and substantially the lower half of its sides containing perforations or openings." This disclaimer was not filed until within a few months of the expiration of the term of the patent. But, assuming there has been no unreasonable delay or neglect in filing the disclaimer, it cannot avail here. If it is true that the patentees defectively or insufficiently described the invention, and claimed more than they had a right to claim as new, they were entitled to a reissue of their patent upon surrender of the original. But it is not the office of a disclaimer to reform or alter the description of the invention. If a patentee has claimed more than that of which he was the inventor, his patent may be valid for all that part which is justly and truly his own, and he may recover upon his patent if the part which is his own be definitely distinguished from the parts claimed without right; but in such case he cannot recover costs unless a disclaimer has been entered before suit commenced. When there are several claims, some of which he is entitled to and others of which he is not entitled to, the part of the invention which is his own may be definitely distin-

guishable from that which is not his own, and a disclaimer before suit brought will put him right, and enable him to recover upon his patent as though it had originally been confined to the proper claims; and there would seem to be no objection in such a case to eliminating by his disclaimer such parts of the description as relate to the claims to which he is not entitled and which he abandons. This, however, is a very different thing from converting a claim from one thing into a claim for something else, and amending the description to effectuate the claim. This might give the patentee a new patent; it certainly would enable him to grant himself a reissue without the concurrence of the commissioner of patents. It would enable him, after others had occupied the field of invention, and by their intellect and experiments discovered what he had never pointed out or claimed, except, perhaps, so vaguely that his information was valueless, to deprive them of the fruit of their efforts. When there are distinct claims in the patent, some of which are valid and others not; or, where there is a single claim, but a specification by which the public can definitely distinguish what is new and belongs to the patentee, and what does not really belong to him, although he had claimed it, a disclaimer will right the patentee's mistake, and will work no injustice to others.

This is not such a case. There was nothing in the description or claim of the complainants' patent to indicate to the defendant or to the public that they were appropriating anything of which the patentees were the inventors. They had a right to suppose that they were laboring in a new field of invention. The bill is dismissed.